No. 23-11978

I N  T HE
# United States Court of Appeals for the Eleventh Circuit

———————————————

T.T. I NTERNATIONAL  C O ., L TD ,

*Plaintiff-Appellee,*

v.

BMP I NTERNATIONAL , I NC ., ET AL .,

*Defendants-Appellants.*

———————————————

**On Appeal from the United States District Court
for the Middle District of Florida**

———————————————

**APPELLANTS' OPENING BRIEF**

———————————————

L AUREN  H AYES
H USCH  B LACKWELL  LLP
111 Congress Ave, Suite 1400
Austin, TX  78701
Telephone (512) 472-5456
Facsimile (512) 479-1101
lauren.hayes@
  huschblackwell.com

M ICHAEL  T. R AUPP
H USCH  B LACKWELL  LLP
4801 Main Street, Suite 1000
Kansas City, MO  64112
Telephone (816) 983-8000
Facsimile (816) 983-8080
michael.raupp@
  huschblackwell.com

*Attorneys for Defendants-Appellants*

August 23, 2023

# *T. T. International Co., LTD v. BMP International, Inc., et al*
## (11th Cir. — No. 23-11978-D)

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, counsel for Appellants BMP International, Inc., BMP USA, Inc., iGas USA, Inc. and iGas Holdings, Inc., certifies that, to the best of its knowledge, information, and belief, the following persons have an interest in the outcome of this appeal:

1.    Assured Comfort A/C Inc., Affiliate of Appellants

2.    BMP International, Inc., Appellant

3.    BMP USA, Inc., Appellant

4.    Cech Samole, Brigid F., Attorney for Appellee

5.    Clemente, Katherine M., Attorney for Appellee

6.    Cool Master USA LLC, Affiliate of Appellants

7.    Corinis, Jennifer W., Attorney for Appellee

8.    Golden G. Imports, LLC, Affiliate of Appellants

9.    Greenberg Traurig, LLP, Counsel for Appellee

10.    Greenberg Traurig, P.A., Counsel for Appellee

11.    Hayes, Lauren E., Attorney for Appellants

12.    Husch Blackwell, LLP, Counsel for Appellants

# *T. T. International Co., LTD v. BMP International, Inc., et al*
## (11th Cir. — No. 23-11978-D)

13.  iGas Holdings, Inc., Appellant

14.  iGas USA, Inc., Appellant

15.  JPRP International, Inc., Affiliate of Appellants

16.  Jung, William F., United States District Judge

17.  Khasin, Irina, Attorney for Appellee

18.  Klein, Buffey E., Attorney for Appellants

19.  L.M. Supply, Inc., Affiliate of Appellants

20.  Meng, Xianbin, Ownership Interest in Appellants

21.  Neilsen, Eric W., Former Attorney for Appellants

22.  Neilsen Law Group, P.A., Former Attorney for Appellants

23.  RAMJ Enterprises, Inc., Affiliate of Appellants

24.  Raupp, Michael T., Attorney for Appellants

25.  Scales N Stuff, Inc., Affiliate of Appellants

26.  Smendec, Kayli, Former Attorney for Appellee

27.  Sneed, Julie S., United States Magistrate Judge

28.  Syncoolgas Technology Co., Ltd., Ownership Interest in Appellee

29.  T.T. International Co., LTD, Appellee

30.  Weinstein, David B., Attorney for Appellee

31.  White, Christopher R., Attorney for Appellee

32.  Xiao, Roy, Attorney for Appellee

33.  Zhang, Tianli, Ownership Interest in Appellee

*T. T. International Co., LTD v. BMP International, Inc., et al*
(11th Cir. — No. 23-11978-D)

34.    Zhejiang Juhua Co., Ltd., Ownership Interest in Appellant

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, Appellants make the following statements as to corporate ownership:

Appellants BMP USA, Inc. and BMP International, Inc. state that they are wholly owned by iGas Holdings, Inc., a Delaware Corporation which is not publicly traded. Appellant iGas Holdings, Inc. has no parent corporation and no publicly traded corporation owns 10% or more of its stock.

Appellant iGas USA, Inc. states that it is partially owned by iGas Holdings, Inc., a Delaware Corporation which is not publicly traded. iGas USA, Inc. is also partially owned by Zhejiang Juhua Co., Ltd., a publicly held company.

/s/ *Michael T. Raupp*

**C-3 of 3**

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument. Given the importance Congress placed on interlocutory orders denying arbitration, Appellants believe oral argument is warranted. Further, this case involves an international arbitration and thus implicates the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Oral argument is appropriate here to discuss the implications of the Convention with respect to the courts' traditional arbitration precedents.

# TABLE OF CONTENTS

**Page**

TABLE OF CITATION ............................................................................iv

STATEMENT OF SUBJECT-MATTER AND APPELATE
JURISDICTION ...................................................................................x

STATEMENT OF THE ISSUES ...............................................................1

STATEMENT OF THE CASE ..................................................................2

I.    Course of Proceedings and Disposition in Court Below .............2

II.    Statement of Facts ........................................................................3

    A.    TTI and BMP Entities Begin Doing Business
        Together in 2012 ...................................................................3

    B.    Appellant iGas USA is formed in February 2018
        pursuant to a Joint Venture Contract Containing a
        Binding Arbitration Clause ....................................................4

    C.    TTI sues the BMP Entities and iGas USA in a Separate
        Lawsuit for Breach of Contract on Allegedly Unpaid
        Invoices ................................................................................8

    D.    TTI Files this New Lawsuit Asserting Claims Directly
        Relating to the JVC...............................................................9

III.   Standard of Review ....................................................................10

SUMMARY OF THE ARGUMENT ........................................................11

ARGUMENT .......................................................................................14

I.    The Trial Court Erred in Finding that the Importer
    Defendants Waived their Right to Arbitrate ................................14

A.   Federal law's strong presumption in favor of arbitration is even stronger in the field of international commerce ...................................................... 14

B.   The district court erred in concluding that the Importer Defendants waived their right to arbitrate based on actions taken in a different lawsuit................. 17

C.   Appellants have not otherwise waived their right to arbitrate the dispute......................................................... 27

II.   This Court Should Compel Arbitration under the FAA and the Convention ....................................................................... 30

A.   There is a written agreement to arbitrate ............................ 31

B.   The Convention's Other Jurisdictional Requirements are Met.................................................................................. 35

C.   In the alternative, TTI agreed to arbitrate the underlying dispute ................................................................ 36

D.   Relatedly, iGas USA and iGas Holdings may enforce the JVC's arbitration clause even if they are non-parties to the JVC. ................................................................................ 46

CONCLUSION ....................................................................................... 50

CERTIFICATE OF COMPLIANCE ....................................................... 52

CERTIFICATE OF SERVICE................................................................. 53

# TABLE OF CITATION

**Cases**                                                                                    **Page(s)**

*Alberts v. Royal Caribbean Cruises, Ltd.*,
834 F.3d 1202 (11th Cir. 2016) ................................................................

*Amargos v. Verified Nutrition, LLC*,
  2023 WL 1331261 (S.D. Fla. Jan. 31, 2023) .......................................... 30

*Armas v. Prudential Sec., Inc.*,
  842 So. 2d 210 (Fla. 3d DCA 2003) ...................................................... 49

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009) .............................................................................. 46

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) .............................................................................. 15

*Bautista v. Star Cruises*,
  396 F.3d 1289 (11th Cir. 2005) ........................................... 15, 16, 35, 36

*Bayco Prod., Inc. v. ProTorch Co., Inc.*,
  2020 WL 2574626 (E.D. Tex. May 21, 2020) ............................ 38, 41, 42

*Caley v. Gulfstream Aerospace Corp.*,
  428 F.3d 1359 (11th Cir. 2005) ............................................................ 14

*Chevron Corp. v. Ecuador*,
  795 F.3d 200 (D.C. Cir. 2015)............................................................... 33

*Chevron Corp. v. Republic of Ecuador*,
  949 F. Supp. 2d 57 (D.D.C.), *judgment entered*, 987 F. Supp. 2d
  82 (D.D.C. 2013), *aff'd sub nom. Chevron Corp. v. Ecuador*, 795
  F.3d 200 (D.C. Cir. 2015) .............................................................. 33, 34

*Collado v. J. & G. Transp., Inc.*,
  820 F.3d 1256 (11th Cir. 2016) ...................................................... 19, 20

*Crowley Mar. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA.*,
   307 F. Supp. 3d 1286 (M.D. Fla. 2018) ...................................................25

*Dimattina Holdings, LLC v. Steri-Clean, Inc.*,
   195 F. Supp.3d 1285 (S.D. Fla. July 18, 2016) .....................................48

*Doctor's Assocs., Inc. v. Distajo*,
   107 F.3d 126 (2d Cir. 1997) .....................................................................19

*Envision Ins. Co. v. Khan*,
   No. 13-cv-114-EAK-EAJ, 2014 WL 12868890
   (M.D. Fla. Feb. 25, 2014) ...............................................................18, 19

*Escobal v. Celebration Cruise Operator, Inc.*,
   482 F. App'x 475 (11th Cir. 2012) .........................................................48

*Escobar v. Celebration Cruise Operator, Inc.*,
   805 F.3d 1279 (11th Cir. 2015) ..............................................................15

*Garcia v. Harmony Healthcare, LLC*,
   No. 8:20-CV-1065-WFJ-AAS, 2021 WL 1610093 (M.D. Fla. Apr. 26,
   2021) ...........................................................................................................18

*Garcia v. Wachovia Corp.*,
   699 F.3d 1273 (11th Cir. 2012) ..............................................................29

*Gingiss Int'l, Inc. v. Bormet*,
   58 F.3d 328 (7th Cir. 1995) .....................................................................19

*Gold Rsrv. Inc. v. Bolivarian Republic of Venezuela*,
   146 F. Supp. 3d 112 (D.D.C. 2015) .......................................................34

*Grant v. JP Morgan Chase & Co.*,
   2019 WL 5215711 (M.D. Fla. Oct. 16, 2019) .......................................30

*Griggs v. Kenworth of Montgomery, Inc.*,
   775 F. App'x 608 (11th Cir. 2019) ...........................................................x

*Grigsby & Assocs., Inc. v. M Sec. Inv.*,
   635 F. App'x 728 (11th Cir. 2015) ....................................................18, 28

*Gutierrez v. Wells Fargo Bank*,
   889 F.3d 1230 (11th Cir. 2018) .......................................................17, 18

*Henderson v. Idowu*,
   828 So. 2d 451 (Fla. 4th DCA 2002) ....................................................50

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   ___ U.S. ___, 139 S.Ct. 524 (2019) ...................................................32, 33

*Hibiscus Assocs. Ltd. v. Bd. Of Trustees of Policemen & Firemen Ret.
   Sys. of City of Detroit*,
   50 F.3d 908 (11th Cir. 1995) ..........................................................38, 40

*Hirsch v. Jupiter Golf Club LLC*,
   232 F. Supp. 3d 1243 (S.D. Fla. 2017) ..................................................39

*Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*,
   141 F.3d 1434 (11th Cir. 1998) ............................................................16

*Jiangsu Beier Decoration Materials Co. v. Angle World LLC*,
   52 F.4th 554 (3d Cir. 2022) ................................................................35

*Johnson Enters. of Jacksonville v. FPL Grp., Inc.*,
   162 F.3d 1290 (11th Cir. 1998) ............................................................44

*Kindred Nursing Centers Ltd. P'ship v. Clark*,
   581 U.S. 246 (2017) ...........................................................................31

*Klay v. All Defendants*,
   389 F.3d 1191 (11th Cir. 2004) ............................................................25

*Lindo v. NCL (Bahamas), Ltd.*,
   652 F.3d 1257 (11th Cir. 2011) ............................................................15

*Maxcess, Inc. v. Lucent Techs., Inc.*,
   433 F.3d 1337 (11th Cir. 2005) ............................................................43

*McAdoo v. New Line Transp., LLC,*
   No. 8:16-CV-1917-T-27AEP, 2017 WL 942114 (M.D. Fla. Mar. 9, 2017)
   .................................................................................................. 48

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
   473 U.S. 614 (1985) ................................................................ 15

*Morewitz v. The West of England Ship Owners Mutual Protection and
   Indemnity Association (Luxembourg),*
   62 F.3d 1356 (11th Cir. 1995) ............................................... 24

*Morgan v. Sundance, Inc.,*
   ___ U.S. ___, 142 S. Ct. 1708 (2022)................................... 27

*Moses H. Come Mem'l Hosp. v. Mercury Constr. Corp.,*
   460 U.S. 1 (1983) ............................................................ 14, 17

*MS Dealer Serv. Corp. v. Franklin,*
   177 F.3d 942 (11th Cir. 1999) ........................................ 46, 49

*Multi-Fin. Sec. Corp. v. King,*
   386 F.3d 1364 (11th Cir. 2004) ............................................ 11

*Nipro Corp. v. Verner,*
   No. 19-62121, 2021 WL 8894430 (S.D. Fla. 2021) ......... 16, 33

*Northrop & Johnson Yachts-Ships, Inc. v. Royal Van Lent Shipyard,
   B.V.,*
   855 F. App'x 468 (11th Cir. 2021) ....................................... 15

*Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De
   L'Industrie Du Papier (RAKTA),*
   508 F.2d 969 (2d Cir. 1974)................................................. 33

*Pier 1 Cruise Experts v. Revelex Corp.,*
   929 F.3d 1334 (11th Cir. 2019) ........................................... 44

*Reiterman v. Abid,*
   26 F.4th 1226 (11th Cir. 2022)............................................ 10

*Samara v. Taylor*,
    38 F.4th 141 (11th Cir. 2022) .................................................... 4

*SE Prop. Holdings, LLC v. Welch*,
    65 F.4th 1335 (11th Cir. 2023) ................................................ 23

*S & H Contractors, Inc. v. A.J. Taft Coal Co.*,
    906 F.2d 1507 (11th Cir. 1990) ............................................... 29

*Subway Equip. Leasing Corp. v. Forte*,
    169 F.3d 324 (5th Cir. 1999) ................................................... 19

*Syscom (USA), Inc. v. Nakajima USA, Inc.*,
    No. CV1407137ABJPRX, 2014 WL 12695688 (C.D. Cal. Dec. 3, 2014)
    .................................................................................................. 47

*Terminix Int'l Co., L.P. v. Palmer Ranch Ltd. P'ship*,
    432 F.3d 1327 (11th Cir. 2005) ............................................... 34

*United States v. Rey*,
    811 F.2d 1453 (11th Cir. 1987) ................................................. 4

*Warrington v. Rocky Patel Premium Cigars, Inc.*,
    2023 WL 1818920 (11th Cir. Feb. 8, 2023) ............................. 29

**Statutes**

9 U.S.C. § 1 ..................................................................................... x, 12

9 U.S.C. § 2 ........................................................................................ 14

9 U.S.C. § 16(a) ................................................................................... x

9 U.S.C. § 201 .................................................................................... 15

28 U.S.C. § 1332(a)(2) ......................................................................... x

**Rules**

Eleventh Circuit Rule 26.1-1 ......................................................... 1, 3

Fed. R. App. 32(a)(5) ......................................................................... 52

Fed. R. App. P. 32(a)(6) ...................................................................52

Fed. R. App. P. 32(a)(7)(B) ...........................................................52

Fed. R. App. P. 32(f) .........................................................................52

Federal Rule of Appellate Procedure 26.1 .............................................1, 3

Federal Rule of Civil Procedure 7.1 .........................................................10

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

This Court has jurisdiction over this case pursuant to 9 U.S.C. § 16(a). Appellants appeal the district court's denial of their motion to compel arbitration. (Doc 46.) Pursuant to Section 16(a) of the Federal Arbitration Act, 9 U.S.C. § 1, *et al.* (the "FAA"), an appeal may be taken from an interlocutory order denying a petition to compel arbitration. *See also Griggs v. Kenworth of Montgomery, Inc.*, 775 F. App'x 608, 610 (11th Cir. 2019).

Appellants' appeal is timely. The district court entered its order denying the motion to compel arbitration on May 15, 2023. (Doc 46.) Appellants filed their notice of appeal on June 12, 2023. (Doc 56.)

The district court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are completely diverse. Appellee is a citizen of a foreign state (the People's Republic of China), and Appellants are citizens of Florida. Appellee seeks damages exceeding $75,000.

## STATEMENT OF THE ISSUES

Whether the district court erred in denying Appellants' motion to compel arbitration by concluding Appellants waived their right to arbitrate when they defended against different, unrelated claims in an earlier lawsuit, which also did not involve all parties in this case.

## STATEMENT OF THE CASE

## I.    Course of Proceedings and Disposition in Court Below

Plaintiff-Appellee T.T. International Co., Ltd. ("TTI") filed its Complaint against Defendants-Appellants BMP International Inc., BMP USA, Inc., iGas USA, Inc., and iGas Holdings, Inc. (collectively "Importer Defendants") on August 16, 2022, asserting claims that BMP International, Inc. and BMP USA, Inc. (collectively the "BMP Entities") fraudulently transferred assets to iGas USA, Inc. and iGas Holdings, Inc. (collectively the "iGas Entities") during the pendency of a different lawsuit. (Doc 1 – Pg 15-23.) On October 3, 2022, the Importer Defendants answered TTI's Complaint. (Docs 15-18.)

There was no activity in the district court until January 19, 2023, when the district court directed the parties to file a joint case management report. (Doc 19.) Shortly thereafter, the Importer Defendants retained new counsel and moved to compel arbitration. (Docs 22, 30.) On May 15, 2023, the United States District Court for the Middle District of Florida denied the Importer Defendants' Motion to Dismiss and Compel Arbitration on the ground that the BMP Entities and iGas USA waived whatever rights to compel arbitration they may have had by

failing to assert them in a different lawsuit, *T.T. Int'l Co., Ltd v. BMP Int'l, Inc. et al*, No. 8:19-cv-2044-CEH-AEP. (Doc 46 – Pg 10.) On June 12, 2023, the Importer Defendants appealed the district court's order. (Doc. 56 – Pg 1.)

## II.    Statement of Facts

### A.    TTI and BMP Entities Begin Doing Business Together in 2012.

TTI is a Chinese company; it is organized under the laws of the People's Republic of China with its principal place of business in Dalian, China. (Doc 1 – Pg 4 ¶ 15.) It buys and sells refrigerants and related products from companies such as Zhejiang Juhua Co., Ltd ("Juhua") in China. (Doc 1 – Pg 6 ¶ 26; TTI Decl., Doc 38-1 – Pg 1 ¶¶ 3-4.) The Importer Defendants are Florida corporations that purchase and import refrigerants and related products from China for resale in the United States. (Doc 1 – Pgs 4-5 ¶¶ 16-19, 6 ¶ 27.)

Importer Defendants' business relationship with TTI began in 2012 when BMP International started buying refrigerant goods from TTI. (*Id.* at Pg 6 ¶ 29.) In June 2015, TTI began doing business with BMP USA, and TTI and BMP International's business relationship eventually phased out over time. (*Id.* at Pg 7 ¶ 30.)

3

The BMP Entities' transactions with TTI took place in China, and liability and ownership for the goods passed there as indicated by the "FOB" Ningbo, China term on the commercial invoices. *T.T. Int'l Co., Ltd. v. BMP Int'l, Inc., et al.*, No. 8:19-cv-02044, Doc 228 at 6 (the "Breach of Contract" litigation).[1] After the BMP Entities bought the refrigerant goods from TTI in China, they would ship the goods to the United States and were responsible for obtaining clearance for those goods to be imported into the United States. *Id.*, Doc 214 at Pg 6 ¶ 17.

## B. Appellant iGas USA is formed in February 2018 pursuant to a Joint Venture Contract Containing a Binding Arbitration Clause.

More than five years after TTI started doing business with BMP International, TTI's President (Tianli Zhang) met with the BMP Entities' President (Xianbin Meng) and a partially state-owned Chinese refrigerant manufacturer (Juhua) to discuss forming a joint venture. (Doc 38-1 – Pg 1 ¶ 6.) Following those discussions, a joint venture—iGas USA—was formed. (*See id.* at Pgs 1-2 ¶¶ 6-8.)

---

[1] This Court may take judicial notice of "'its own records and records of inferior courts.'" *Samara v. Taylor*, 38 F.4th 141, 143 n.1 (11th Cir. 2022) (quoting *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987)).

Mr. Meng, Juhua, and TTI executed the contract forming iGas USA (the "JVC") on February 28, 2018. (Doc 30 – Pg 2; Doc 38-1 – Pg 2 ¶¶ 8-9.) The purpose of the joint venture was "to produce and operate refrigerants and other related products." (Doc 30-1 – Pg 5.)

The JVC was written in Chinese and is a Chinese contract.[2] (Doc 30-1 – Pgs 37-71.) The JVC's governing law provision provides: "[t]he conclusion, interpretation and execution of this agreement, as well as the settlement of disputes related to this agreement between the parties shall be governed by Chinese laws and regulations." (Doc 30-1 – Pg 32.) The JVC further provides that "the laws of Florida shall only be applied to the minimum necessary extent." (*Id.* at Pg 33.)

The first page of the JVC identifies that it was entered into between Mr. Meng (Party A) and Juhua (Party B). (*Id.* at Pg 5.) TTI is identified, expressly, as an affiliate. (*Id.* at Pgs 5-6.) The JVC's affiliate definition provides "[f]or the purposes of this contract, affiliates not only include BMP, but also T.T International company." (*Id.* at Pg 6.) Affiliates are also defined, generally, to include "any

---

[2] A certified translation of the JVC was included with Appellants' Motion to Compel Arbitration. (Doc 30-1.) Throughout this brief, the citations to the JVC are to the English translation of the JVC.

person or legal entity that is directly or indirectly controlled by a party, is under common control with that party, or controls that party . . . ." (*Id.* at Pg 5.) A review of publicly available Chinese contracts on the Securities and Exchange Commission's website reflects that it is common for Chinese contracts to be entered into by a "Party A" and "Party B." (*See* Doc 44-1.)

In forming the JVC, Mr. Meng and all of his companies (which includes the BMP Entities) were required to "immediately stop and ensure that its affiliates stop engaging in the target business" with "all such business [being] transferred to the joint venture company for operation." (Doc 30-1 – Pg 15 ¶ 7.1(c)). Mr. Meng and all of his companies were also required to sell their tangible assets and steel cylinders to the joint venture company. (*Id.* at Pg 16 ¶ 7.1(f)). The JVC similarly required BMP to transfer its employees to the JVC. (*Id.* at Pg 25 ¶ 14.1.)

As it relates to TTI, Mr. Zhang admits he was involved in discussions relating to the formation of the joint venture, iGas USA, and that TTI would profit from the joint venture's formation. (Doc 38-1 – Pg 1 ¶ 6.) Mr. Zhang stated he understood that TTI's "role would

6

be to act as a supplier of refrigerant gases and related goods to the joint venture . . . that T.T. would continue to facilitate the shipment of goods manufactured by Juhua to Mr. Meng in the United States . . . [and that] T.T. would thereby share in the profits of the joint venture." (*Id.* at Pgs 1-2 ¶ 7.) Mr. Zhang also understood that he "would serve as a Director on the Board of Directors of the joint venture." (*Id.* at Pg 1 ¶ 6.) The JVC also imposed substantial rights and obligations on TTI, including requiring TTI to give priority to purchasing the products of Juhua and requiring Juhua to provide preferential pricing to TTI. (*See* Doc 30-1 – Pg 16 ¶ 7.2(a), (c).)

The JVC contains a broad arbitration clause, requiring that any dispute arising from the performance of the JVC or related to the JVC shall be submitted to the Shanghai International Economic and Trade Arbitration Commission Arbitration Center ("SIETAC") for arbitration and conducted in accordance with SIETAC's arbitration rules. (Doc 38-1 – Pg 33 ¶ 22.2.) The JVC also requires that the arbitration occur in Shanghai and in Chinese. (*Id.*) Pursuant to the terms of the JVC, the JVC's arbitration clause survives termination of the contract. (*Id.* at Pg 30 ¶ 18.4.)

7

While TTI is expressly excluded from specific obligations of the JVC, such as Paragraphs 7.1 and 7.2, TTI is **not** excluded from the arbitration clause. (*Id.* at Pgs 5-17, 33.)

### C. TTI sues the BMP Entities and iGas USA in a Separate Lawsuit for Breach of Contract on Allegedly Unpaid Invoices.

In August 2019, TTI sued the BMP Entities and iGas USA for unpaid invoices relating to refrigerant goods and asserted claims against the defendants for breach of contract, unjust enrichment, account stated, and open account. Breach of Contract, Doc 214 at 1. The claims against BMP USA related to unpaid invoices from July 2017 to approximately May 2018, and the claims against BMP International related to unpaid invoices from June to August 2017. *Id.* at 1 ¶¶ 143, 152. The claims against iGas USA were limited to two months of unpaid invoices—the June and July 2018 invoices. *Id.* ¶ 163. iGas USA settled with TTI early in the litigation and was dismissed from the lawsuit in October 2020 after it accepted an offer of settlement. *Id.*, Docs 72, 75. Thereafter, the litigation proceeded as to the BMP Entities, and a bench trial was held in August 2022. *Id.*, Doc 214.

8

The court issued its Opinion in February 2023, finding there was no contract between TTI and the BMP Entities because there was no meeting of the minds. *Id.* The court found the BMP Entities liable for unjust enrichment. *Id.* The BMP Entities moved to amend the judgment on the grounds that the district court applied the wrong measure of damages, and that motion remains pending. *Id.*, Doc 228.

**D.    TTI Files this New Lawsuit Asserting Claims Directly Relating to the JVC.**

While the Breach of Contract suit was pending, TTI filed this new, underlying lawsuit alleging that BMP USA fraudulently transferred equipment to iGas USA and that the BMP Entities fraudulently transferred their right to seek "HFC allowances"[3] to iGas Holdings. (Doc 1.)

The BMP Entities and the iGas Entities answered TTI's Complaint in October 2022. (Docs 15-18.) There was no other activity in the district court until January 2023, when the district court ordered a scheduling conference. (Doc 19.) Thereafter, the district

---

[3] HFC allowances, as alleged by TTI, are annual allowances awarded by the United States Environmental Protection Agency that are required to import HFC-containing refrigerants into the United States. (Doc 1 – Pg 3 ¶¶ 11-12.)

court entered a scheduling order. (Docs 20-21.) On February 8, 2023, the Importer Defendants retained new counsel and filed the required Federal Rule of Civil Procedure 7.1 Corporate Disclosure Statements. (Docs 22-26.)

Shortly thereafter, in March 2023, Importer Defendants' counsel notified TTI's counsel of Importer Defendants' intent to file a motion to compel arbitration and conferred regarding that motion. (Doc 30 – Pg 18.) TTI did not consent to arbitrating the underlying lawsuit, and the Importer Defendants thus filed their motion to compel arbitration. (Doc 30.)

On May 15, 2023, the district court denied the motion to compel arbitration. (Doc 46.) Specifically, the district court held that the Importer Defendants waived their right to arbitrate by failing to compel arbitration in the separate Breach of Contract lawsuit. (*Id.* at Pg 12.) On June 12, 2023, the Importer Defendants appealed that order. (Doc 56.)

## III.  Standard of Review

The Eleventh Circuit reviews a district court's order denying a motion to compel arbitration *de novo. Reiterman v. Abid*, 26 F.4th 1226,

1231 (11th Cir. 2022). Findings of fact are reviewed for clear error. *Multi-Fin. Sec. Corp. v. King*, 386 F.3d 1364, 1366 (11th Cir. 2004).

## SUMMARY OF THE ARGUMENT

The district court erred by denying the Importer Defendants' Motion to Compel Arbitration. Specifically, the district court refused to compel TTI's fraudulent transfer claims in *this lawsuit* to arbitration, ruling that the Importer Defendants waived the ability to arbitrate when only *some Importer Defendants* (the BMP Entities and iGas USA) defended against *different claims* (breach of contract, account stated, open account, and unjust enrichment) in a *different lawsuit*. What is more, that separate lawsuit involved claims arising in 2012-2018, when the arbitration clause at issue in this case was not even signed until 2018.

Contrary to the district court's ruling, a party only waives its right to arbitrate subsequent claims if the claims present the same facts and legal issues. Here, that test was not met. The fraudulent transfer claims TTI now asserts are based on transfers occurring after 2018. And not one legal element of TTI's fraudulent transfer claims overlaps with the claims asserted in the earlier litigation. Because the Importer Defendants did not waive their right to arbitrate the fraudulent transfer claims asserted

11

by TTI in this lawsuit, this Court should reverse the district court's ruling that the Importer Defendants waived the right to arbitrate TTI's fraudulent transfer claims.

Once this Court reverses the error regarding waiver, it becomes clear that TTI's fraudulent transfer claims must be compelled to arbitration before the Shanghai International Economic and Trade Arbitration Commission Arbitration Center, and this Court should enter an order directing the district court to compel that arbitration. Because the JVC is between a United States company and a Chinese company, it is subject to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), which is implemented into the Federal Arbitration Act, 9 U.S.C. § 1, *et al.* (the "FAA") in Chapter Two. The Convention requires courts of signatory nations to give effect to private arbitration agreements, and the FAA requires this Court to compel arbitration if four jurisdictional elements are met. These requirements must be interpreted consistent with the well-established liberal federal policy favoring arbitration agreements, and that policy is even stronger in the field of international commerce.

In fact, only one of the Convention's elements was even disputed at the district court—whether there is a written agreement to arbitrate. Because TTI signed a contract, the JVC, containing an arbitration clause, and the scope of the contract directly relates to the fraudulent transfer claims asserted in the underlying district court action, this Court must compel arbitration.

Before the district court, TTI argued that despite signing the JVC and acknowledging the benefits it intended to receive under the JVC, it was not a party to the JVC and did not agree to the arbitration clause. The district court did not resolve this issue, but in the event TTI attempts to assert this same argument again on appeal, it fails. As an initial matter, whether TTI is bound by the JVC's arbitration clause is a question of arbitrability that has been delegated to the arbitrator. Accordingly, the Court should address the limited question of whether there is a written agreement to arbitrate and delegate the remaining question of whether TTI is bound by the same to the arbitrator. But even if this Court proceeds further, TTI is plainly bound by the JVC's arbitration clause.

This Court should reverse the ruling of the district court and direct the district court to compel this case to arbitration.

## ARGUMENT

## I. The Trial Court Erred in Finding that the Importer Defendants Waived their Right to Arbitrate.

Congress has consistently maintained a strong presumption favoring the enforcement of arbitration agreements, a presumption that applies with even greater force in the field of international arbitration like the agreement at issue here.  In this case, the district court erred by rejecting that presumption and concluding that the Importer Defendants waived their right to arbitrate by actions taken in a *different* lawsuit.

### A. Federal law's strong presumption in favor of arbitration is even stronger in the field of international commerce.

Under the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. This statutory provision "is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Come Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983); *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367-

14

68 (11th Cir. 2005). "The principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal quotations omitted). The presumption in favor of arbitration applies with "special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Bautista v. Star Cruises*, 396 F.3d 1289, 1295 (11th Cir. 2005) ("We are mindful that the Convention Act generally establishes a strong presumption in favor of arbitration of international commercial disputes.") (internal quotations omitted).

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") "generally requires the courts of signatory nations to give effect to private arbitration agreements and to enforce arbitral awards made in other signatory nations." *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1284 (11th Cir. 2015); *Northrop & Johnson Yachts-Ships, Inc. v. Royal Van Lent Shipyard, B.V.*, 855 F. App'x 468, 471-72 (11th Cir. 2021). The Convention is incorporated into federal law in Chapter Two of the FAA. *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1262 (11th Cir. 2011); *see also* 9 U.S.C. § 201 ("The

[Convention] shall be enforced in United States courts in accordance with this chapter."). "The Convention must be enforced according to its terms over all prior inconsistent rules of law." *Nipro Corp. v. Verner*, No. 19-62121, 2021 WL 8894430, at *3 (S.D. Fla. 2021) (internal quotations omitted); *see also Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440 (11th Cir. 1998), *overruled on other grounds by Corporacion AIC, SA v. Hidroelectrica Santa Rita S.A.*, 66 F.4th 876 (11th Cir. 2023).

An arbitration agreement is subject to the Convention when four elements are met:

> (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Bautista*, 396 F.3d at 1295 n.7. After conducting only a limited inquiry, "[i]n the absence of an affirmative defense, a district court must compel arbitration under the Convention if four jurisdictional requirements are met." *Alberts v. Royal Caribbean Cruises, Ltd.*, 834 F.3d 1202, 1204 (11th Cir. 2016). Importantly, "as a matter of federal law, any doubts

16

concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses*, 460 U.S. at 24-25.

Here, the district court rested its decision on waiver. (Doc 46 – Pg 10.) That decision is error. Because the four jurisdictional requirements of the Convention are otherwise met, this Court should reverse and direct the district court to enter an order compelling this case to arbitration.

**B.    The district court erred in concluding that the Importer Defendants waived their right to arbitrate based on actions taken in a different lawsuit.**

The district court incorrectly concluded that the Importer Defendants waived their right to arbitrate the fraudulent transfer claims alleged in this lawsuit based on actions taken in a different, earlier lawsuit. Because federal law favors arbitration, the party asserting waiver, here TTI, bears a heavy burden of proof. *Gutierrez v. Wells Fargo Bank*, 889 F.3d 1230, 1236 (11th Cir. 2018). A party waives their right to arbitrate if, under the totality of the circumstances, a party has acted inconsistently with their right to

arbitrate. *Id.*; *see also Grigsby & Assocs., Inc. v. M Sec. Inv.*, 635 F. App'x 728, 731 (11th Cir. 2015).

By litigating (and settling some of) the contract claims in the separate lawsuit, the BMP Entities and iGas USA did not act inconsistently with the right to arbitrate the fraudulent transfer claims.[4] "[O]nly prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate." *Garcia v. Harmony Healthcare, LLC*, No. 8:20-CV-1065-WFJ-AAS, 2021 WL 1610093, at *6 (M.D. Fla. Apr. 26, 2021) (quoting *Envision Ins. Co. v. Khan*, No. 13-cv-114-EAK-EAJ, 2014 WL 12868890, at *2 (M.D. Fla. Feb. 25, 2014)) (internal quotation marks omitted).

In *Garcia*, the district court accurately articulated this legal principle, relying on decisions from the Second, Fifth, and Seventh

---

[4] To be clear, one of the Importer Defendants here—iGas Holdings—was **not even a party** to the Breach of Contract lawsuit. *See generally* Docket, Breach of Contract. In fact, iGas Holdings was not created until after the joint venture was formed. Yet, TTI made the unilateral decision to name it as a separate defendant in this case. Accordingly, at the very least, iGas Holdings (which was not even a party to the separate, earlier litigation) has the unilateral ability to compel this case to arbitration on its own. Indeed, iGas Holdings is an affiliate of Mr. Meng and has standing to enforce the JVC's arbitration clause.

Circuits to recite it. *See id.*; *see also Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 328 (5th Cir. 1999) ("We hold today that a party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate."); *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 332 (7th Cir. 1995) ("Gingiss did not waive these claims [Langham Act] by prosecuting the unlawful detainer action in California state court because that action involved different issues."); *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997) ("Other circuits seem to agree that waiver can only occur when a party has previously litigated the same claims it now seeks to arbitrate.").

Further, the legal standard set out by these other circuits appears to be in accord with this Court's precedent that an amended complaint revives the right to arbitrate if it unexpectedly changes the scope or theory of the plaintiff's claims. *See Collado v. J. & G. Transp., Inc.*, 820 F.3d 1256, 1259 (11th Cir. 2016). In *Collado*, this Court reversed and remanded the district court's denial of a motion to compel arbitration. *Id.* at 1261. The defendant there moved to compel arbitration after the plaintiff filed a second amended complaint asserting state law claims for breach of contract and quantum meruit

when the previously filed complaints asserted federal claims under the Fair Labor Standards Act. *Id.* at 1258-59. This Court held that while the defendant conceded it waived the right to arbitrate the federal Fair Labor Standards Act claim, the "[w]aiver of the right to arbitrate a federal claim does not extend to later asserted state claims." *Id.* at 1260. In fact, this Court elaborated even further, holding that rather than a revival of the waived right to arbitrate, "there was never a waiver of the right to arbitrate the state claims in the first place." *Id.*

Thus, the legal principle articulated by all of these courts illustrates that a waiver only occurs when the later lawsuit involves the same legal and factual issues as the prior lawsuit. Once again, the district court's error did not occur in reciting this legal standard, the error is in failing to apply it. Simply put, the district court failed to consider the legal and factual issues the parties needed to establish in the present lawsuit compared to the prior suit—a necessary analysis in determining whether a party waives their right to arbitrate. (*See generally* Doc 46.) Had the district court conducted that analysis, it would have determined that the Importer Defendants

have not waived their right to arbitrate the fraudulent transfer claims now being asserted because the two separate lawsuits involve *different* legal and factual issues.

To begin, the two cases involve entirely different claims and theories. In the earlier contract litigation, TTI filed suit against the BMP Entities and iGas USA related to unpaid invoices for refrigerant products from 2012 through June 2018, asserting claims for breach of contract, account stated, open account, and unjust enrichment. Breach of Contract, Doc 1. The underlying lawsuit at issue here, conversely, relates to transfers of HFC allowances that the Importer Defendants allegedly made in 2021, as well as the alleged transfer of equipment in June 2020. (Doc 1 – Pgs 11, 14 ¶¶ 56, 69.)

Moreover, TTI's two separate lawsuits do not overlap in time— the first contract lawsuit relates to transactions pre-dating 2019, whereas the second lawsuit relates to actions taking place after June 2020. Merely by looking at the dates of the alleged conduct in the two lawsuits, it is clear they do not (and could not) involve the same factual issues. Because the two lawsuits involve different factual

issues, the Importer Defendants did not waive their right to arbitrate the fraudulent transfer claims by litigating the breach of contract suit.

Further, even at a more granular level, the two lawsuits do not involve the same legal issues. In its prior contract litigation, TTI asserted claims for: breach of contract, account stated, open account, and unjust enrichment.[5] Breach of Contract, Doc 1. In the present

---

[5] The elements for these claims are as follows:

Breach of Contract: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." Breach of Contract, Doc 214 at 30 (internal quotations omitted).

Account Stated: "an agreement between persons who have had previous transactions, fixing the amount due in respect to such transactions and promising payment . . . an account stated arises from the rendition of a statement of transactions between the parties with a failure on the part of the party whom the account was rendered to object within a reasonable time or an express acquiescence in the account rendered." *Id.* at 36-37 (internal quotations and citations omitted).

Open Account: "(1) that a sales contract existed between the creditor and debtor; (2) that the amount claimed by the creditor represents either the agreed upon sales price or the reasonable value of the goods delivered; and (3) that the goods were actually delivered." *Id.* at 39 (internal quotations omitted).

Unjust enrichment: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Id.* at 40 (internal quotations omitted).

lawsuit, the only claim is fraudulent transfer. (*See generally* Doc 1.) To prevail on this claim, TTI will need to establish: "(1) there was a creditor to be defrauded, (2) a debtor intending fraud, and (3) a conveyance—i.e., a 'transfer'—of property which could have been applicable to the payment of the debt due." *SE Prop. Holdings, LLC v. Welch*, 65 F.4th 1335, 1349 (11th Cir. 2023) (internal quotations omitted) (applying Florida law). ***Not one*** of these legal issues had to be established in the prior contract litigation. Rather, for the first time, TTI will have to prove, for example, that the Importer Defendants made transfers with fraudulent intent and that there was a conveyance of property which could have been applicable to the payment of the debt. Determining the merits of this case will involve, among other things, reviewing statutes governing HFC allowances, the Importer Defendants' rights to HFC allowances, and the equipment owned by the Importer Defendants in 2020—all issues that had no place whatsoever in the earlier contract litigation.

Put simply, while these cases could, in the colloquial sense, be considered "related" in that *some* of the parties overlap and the judgment in the contract Breach of Contract case created a "creditor"

23

in the underlying case here, that is not the test for waiver. The same legal and factual issues are not being litigated in the two cases, and the district court therefore erred.

TTI's and the district court's reliance on *Morewitz v. The West of England Ship Owners Mutual Protection and Indemnity Association (Luxembourg)*, 62 F.3d 1356, 1366 (11th Cir. 1995) misses the mark. There, the legal and factual issues in the two lawsuits were identical. Specifically, *Morewitz* involved a "direct action," in which the injured party could not recover against the insurer until he had recovered a judgment against the insured. *See id.* at 1363-64. The facts, circumstances, and liability determination of the underlying injury were the same in both cases; the direct-action suit was a remedial measure to execute upon the proceeds of the insurance policy. *Id.* In fact, the insurer could not even contest coverage in the second lawsuit as the Court noted that the appropriate time to contest coverage and demand arbitration was during the lawsuit with the insured. *Id.* at 1366. Here, to the contrary, as discussed in detail above, TTI's new fraudulent transfer claims involve an entirely new cause of action,

with new legal issues, new factual issues, new evidence, and a new party.

Additionally, the transactions in the prior contract litigation occurred between 2015 and July 2018. The JVC was not even **executed** until February 2018. Consequently, the vast bulk of the transactions at issue in the prior contract litigation were not even made at a time when the JVC was in place. The Importer Defendants (at least, those Importer Defendants who were also a party to the earlier case) could not have compelled arbitration of claims arising three years before the JVC was executed, even if they wanted to. *Klay v. All Defendants*, 389 F.3d 1191, 1203 (11th Cir. 2004) ("Because arbitration is strictly a matter of contract, we cannot compel arbitration for disputes which arose during time periods in which no effective contract requiring arbitration was governing the parties."). Nor would those Importer Defendants have been able to compel arbitration based on the handful of transactions at issue from February 2018 through July 2018, as alleged breaches of the same contract should be litigated together. *Crowley Mar. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA.*, 307 F. Supp. 3d 1286, 1293 (M.D. Fla.

2018), *aff'd on other grounds sub nom. Crowley Mar. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 931 F.3d 1112 (11th Cir. 2019).

There is no identity of claims, no identity of legal issues, and no identity of factual issues. The timeframe at issue in each case is different. And the parties do not align between the two actions. No authority establishes a waiver in these circumstances.

If anything further were necessary, the lack of waiver is also consistent with the plain language of the JVC, which specifically contemplates that "[i]f a party fails or delays in exercising some of its rights, powers, or privileges under this contract, it does not constitute a waiver of such rights, powers or privileges." (Doc 30-1 – Pg 35 ¶ 23.7.) Thus, to the extent any of the Importer Defendants did not exercise any of their rights to arbitrate in the prior lawsuit, the JVC expressly provides that the Importer Defendants' failure to do so should not be construed as a waiver of that right at a subsequent time.

Finally, the district court also erred to the extent it relied on the alleged prejudice incurred by TTI in concluding that the Importer Defendants waived the right to arbitrate. (*See* Doc 46 – Pg 12.) In *Morgan v. Sundance, Inc.*, the Supreme Court made clear that "the usual federal

rule of waiver does not include a prejudice requirement" and "prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA."[6] ___ U.S. ___, 142 S. Ct. 1708, 1714 (2022).

This Court should reverse the district court's ruling that the Importer Defendants waived the ability to compel arbitration.

## C. Appellants have not otherwise waived their right to arbitrate the dispute.

The district court did not rule that the Importer Defendants waived their right to arbitrate through conduct in *this* case, but, in *dicta*, the district court noted that the underlying case had been pending for eight months before the Importer Defendants moved to compel arbitration. (Doc 46 – Pg 12.) Thus, out of an abundance of caution, to the extent that statement is read as any sort of ruling on waiver—or to the extent TTI relies on this issue on appeal—the Importer Defendants clarify that no waiver occurred in the context of this proceeding.

---

[6] The district court also erred in concluding that "[a]ll the benefits of arbitration (lower costs, quicker results, etc.) were foregone" by litigating the prior lawsuit. (Doc 46 – Pg 13.) These benefits of arbitration can still be realized by arbitrating the fraudulent transfer claims.

To begin, delay alone in asserting the right to arbitrate does not constitute waiver; delay must be coupled with other substantial conduct inconsistent with an intent to arbitrate. *Grigsby*, 635 F. App'x at 733 (finding no waiver where plaintiff filed four lawsuits prior to initiating arbitration). In the roughly eight-month period here, the Importer Defendants did not substantially engage in conduct inconsistent with their right to arbitrate.

This case was essentially stayed from the inception of the lawsuit until February 2023. As discussed, the prior contract lawsuit was filed in August 2019, and that district court entered its opinion in February 2023. Breach of Contract, Doc 214. The new fraudulent transfer lawsuit was filed in August 2022, but other than the filing of the complaint and answers, the parties did not actively litigate or defend the fraudulent transfer action after the suit was filed. *See generally* Docket, *TTI v. BMP Int'l et al.*, No. 8:22-cv-01876 (M.D. Fla.). In fact, the district court had to order the parties to file a joint case management report on January 19, 2023, because the parties had not conferred or otherwise filed a Rule 26(f) report. (Doc 19.) Shortly thereafter, the Importer Defendants retained new counsel who filed a notice of appearance and conferred with TTI's

counsel on a motion to amend Importer Defendants' answers and to compel arbitration. (Docs 22, 29-30.) Other than serving their Rule 26(a)(1) initial disclosures, the parties had not engaged in any discovery or otherwise invoked the machinery of litigation in any way.

In cases where this Court has held that a party waived its right to arbitrate by substantially participating in litigation, the parties were much further into the litigation process. For example, in *Garcia v. Wachovia Corp.*, this Court found waiver where the parties had conducted discovery for more than a year, served and answered interrogatories, and produced approximately 900,000 pages of documents. *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1278 (11th Cir. 2012). Likewise, in *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, the parties had litigated two motions and the moving party had taken five depositions prior to moving to compel arbitration. 906 F.2d 1507, 1514 (11th Cir. 1990).[7]

---

[7] *See also Warrington v. Rocky Patel Premium Cigars, Inc.*, 2023 WL 1818920, *2 (11th Cir. Feb. 8, 2023) (defendant first sued in state court and amended his complaint; then, when plaintiff filed in federal court, defendant participated in the case management proceedings, moved to dismiss, attempted to remand, and forced the plaintiff to file a motion to compel discovery before invoking his right to arbitrate).

In fact, courts within this circuit have found parties did not waive their right to arbitrate where movants did much ***more*** than the Importer Defendants have done here. For example, in *Grant v. JP Morgan Chase & Co.*, the district court found a party retained the right to arbitrate even after the party removed the case to federal court, filed a lengthy motion to dismiss, sought to have the case designated, participated in a case management conference, and filed a case management report—all before moving to compel arbitration. 2019 WL 5215711, at *1 (M.D. Fla. Oct. 16, 2019); *see also Amargos v. Verified Nutrition, LLC*, 2023 WL 1331261, at *6 (S.D. Fla. Jan. 31, 2023) (finding defendant did not waive its right to compel arbitration because, unlike the cases cited by the plaintiff, Defendant did not remove the case to federal court, participate in mediation, exchange discovery, etc.). The Importer Defendants have not waived their right to arbitrate the fraudulent transfer claims based on the mere filing of an answer and participating in a Rule 26(f) conference.

## II.    This Court Should Compel Arbitration under the FAA and the Convention.

In denying Appellants' Motion to Compel Arbitration, the district court initially (and correctly) concluded that it "appears that the Convention's jurisdictional prerequisites are satisfied." (Doc 46 –

Pg 8.) Later in *dicta*, however, the district court appeared to question whether TTI was a party to the JVC and agreed to the arbitration clause. (*See id.* at Pgs 9-10.) The court appropriately declined to issue a definitive ruling on whether TTI or the Importer Defendants agreed to arbitrat,e because those conclusions required the interpretation of Chinese law. (*Id.* at Pg 10.) On appeal, this Court should direct the district court to compel arbitration because the Convention's four jurisdictional prerequisites are met. The remaining "questions" noted by the district court—whether TTI is bound by the arbitration clause and which Importer Defendants can enforce the JVC's arbitration clause—are questions of arbitrability that have been delegated to the arbitrator. Even if they were not, these issues resolve in favor of arbitration.

## A.    There is a written agreement to arbitrate.

The Convention's first jurisdictional requirement is met because there is a written agreement to arbitrate that falls within the meaning of the Convention. *See Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017) ("The FAA makes arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or

in equity for the revocation of any contract.' That statutory provision establishes an equal-treatment principle . . . [t]he FAA thus preempts any state rule discriminating on its face against arbitration . . . .") (internal citations omitted).

TTI and the Importer Defendants do not dispute four critical facts: (1) the JVC was signed by TTI; (2) the JVC contains an arbitration clause; (3) the JVC provides for arbitration in a signatory of the Convention; and (4) the BMP Entities and iGas USA are controlled by Mr. Meng and thereby affiliates of "Party A" to the JVC. (*See* Doc 38-1 – Pgs 1-3.) The ***only dispute*** is whether TTI is bound by the JVC's arbitration clause, and whether the scope of the JVC includes TTI's fraudulent transfer claims. Here, however, because these are issues related to the arbitrability of the dispute, they must be decided by the arbitrator—not the Court. "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and "possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, ___ U.S. ___, 139 S.Ct. 524, 529 (2019). "That is true even if the court thinks that the argument that the

arbitration agreement applies to a particular dispute is wholly groundless." *Id.*

The Convention's parallel rule is identical: "where arbitrability has been clearly and unmistakably delegated to the arbitrator, 'the [New York] Convention ... does not sanction [a Court's] second-guessing the arbitrator's construction of the parties' agreement.'" *Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57, 66 (D.D.C.), *judgment entered*, 987 F. Supp. 2d 82 (D.D.C. 2013), *aff'd sub nom. Chevron Corp. v. Ecuador*, 795 F.3d 200 (D.C. Cir. 2015) (quoting *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier (RAKTA),* 508 F.2d 969, 977 (2d Cir. 1974)).

"Questions of arbitrability encompass two types of disputes: (1) disputes about <u>whether</u> a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement, and (2) threshold disputes about <u>who should have the primary power to decide</u> whether a dispute is arbitrable." *Nipro*, 2021 WL 8894430 at *12 (internal quotations omitted). Arbitration of arbitrability—the second question—is required when an arbitration agreement specifies the arbitration rules to be followed, and the arbitration rules provide that the

arbitrator decides arbitrability. *Terminix Int'l Co., L.P. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005); *see also Gold Rsrv. Inc. v. Bolivarian Republic of Venezuela*, 146 F. Supp. 3d 112, 121 (D.D.C. 2015).

Arbitration of arbitrability is required here because SIETAC's Rules are incorporated into the JVC and require arbitration of arbitrability issues. Article 6, Paragraph 1 of those rules reads: "SHIAC has the discretion to decide on the existence and validity of an arbitration agreement and its jurisdiction over an arbitration case." Article 6, Paragraph 2 follows: "[w]here SHIAC is satisfied with *prima facie* evidence that an arbitration agreement providing for arbitration by SHIAC and binding on the parties exists, it may decide based on such evidence that it has jurisdiction over the arbitration case, and arbitration shall proceed."

*Chevron* and *Gold Reserve* held that very similar language requires arbitration of arbitrability. *Chevron*, 949 F. Supp. 2d at 67; *Gold Rsrv.*, 146 F. Supp. 3d at 121 ("The Additional Facility Rules, in turn, explicitly provide that '[t]he Tribunal shall have the power to rule on its competence.' As Gold Reserve argues, '[B]y incorporating the ICSID

Additional Facility Arbitration Rules into their arbitration agreement through the BIT, the parties agreed that the Tribunal would decide any issues of arbitrability.'") (internal citations omitted). The same result is required here.

Because the JVC requires arbitration of arbitrability, the arbitrator—not a court—must determine whether TTI is bound by the arbitration clause and whether Importer Defendants can enforce it.

### B. The Convention's Other Jurisdictional Requirements are Met.

This Court should compel the fraudulent transfer claims to arbitration because the Convention's remaining three jurisdictional requirements are met (and undisputed). The second requirement, which TTI did not dispute, is that the agreement provides for arbitration in the territory of a signatory of the Convention. Here, the district court properly concluded that China is a signatory. (Doc 46 – Pg 8.) *See Jiangsu Beier Decoration Materials Co. v. Angle World LLC*, 52 F.4th 554, 556 n.1 (3d Cir. 2022) ("The United States and China are signatories to the New York Convention."). The third requirement is that the agreement arise out of a commercial relationship. *Bautista*, 396 F.3d at 1295. Here, there is no disagreement that the JVC is commercial in nature as it involves

the sale and transportation of refrigerant goods. (*See generally* Doc 30-1.) The fourth requirement is that one party to the agreement is not an American citizen or that the commercial relationship has some reasonable relation with one or more foreign states. *Bautista*, 396 F.3d at 1295. Here, both parties agree that TTI and Juhua are Chinese citizens. (Doc 1 – Pg 4 ¶ 15; Doc 30-1.) Further, it makes imminent sense for a Chinese arbitrator to adjudicate a case arising from a contract written in Chinese, that applies Chinese law, involves sales of goods in China, and specifically calls for resolution in a Chinese arbitration.

Because the Convention's four jurisdictional requirements are met, this Court should reverse the district court and compel TTI's fraudulent transfer claims to arbitration.

## C.  In the alternative, TTI agreed to arbitrate the underlying dispute.

With respect to the first jurisdictional requirement, to the extent the Court disagrees that the arbitrability determinations are designated to the arbitrator, the record establishes that TTI is bound by the arbitration clause. In opposing arbitration below, TTI argued it is not a party to the JVC even though it admits it signed the JVC. (Doc 38 – Pgs 4-5). Specifically, TTI argued that it is not bound by the JVC's arbitration

clause because it was not identified as a defined "Party" and was instead only named as an affiliate. (*Id.* at Pgs 4-6.) Although the district court did not rule on this issue, it included *dicta* that questioned whether TTI is a party that would be bound by the arbitration agreement. (*See* Doc 46 – Pgs 9-10.)

To be clear, the district court correctly declined to engage in a full analysis as to whether TTI is bound by the arbitration clause under Chinese law. But the district court's statement that "Plaintiff does not fit the definition of 'Affiliate'" (*Id.* at Pg 9) is challenging to understand based on the plain language of the JVC, which specifically defines who qualifies as an Affiliate: "For the purposes of this contract, affiliates not only include BMP, ***but also T.T International company***." (Doc 30-1 – Pgs 5-6) (emphasis added). There is simply no way that TTI fails to "fit the definition of 'Affiliate'" when the definition of "Affiliate" expressly states affiliates includes TT International. (*Id.*) To be sure, "a written contract must be construed as a whole," and "[t]he cardinal rule of contract law is that a court should strive to effectuate the intent of the parties." *Hibiscus Assocs. Ltd. v. Bd. Of Trustees of Policemen & Firemen Ret. Sys. of City of Detroit*, 50 F.3d 908, 919 (11th Cir. 1995). "When a

contract term is clear and unambiguous, the best evidence of this intent is the term itself, and a court may not give such term meaning beyond that clearly expressed in the four corners of the document." *Id.* Here, the contract's definition of affiliate expressly includes TTI. (Doc 30-1 – Pgs 5-6.) The definition is clear, and to the extent the Court needs to reach this issue, TTI is plainly an affiliate under the unambiguous terms of the JVC.[8]

Adopting TTI's interpretation that "affiliates" are not bound by the JVC or the arbitration clause is also inconsistent with the JVC's intent. Accepting TTI's argument would mean that Mr. Meng and Juhua are the only persons or entities bound by the JVC; however, this cannot be the appropriate conclusion under any legal framework, as the parties' expressed intent is always the guiding light of contract interpretation. (Doc 30-1 – Pg 5); *see also Bayco Prod., Inc. v. ProTorch Co., Inc.*, 2020 WL 2574626, at *6 (E.D. Tex. May 21, 2020) (allowing entities defined as "affiliates" to enforce contract's arbitration provision). As the best

---

[8] At the very least, if the Court were to conclude TTI's affiliate status is ambiguous (despite the clear contractual language), this Court should remand for further proceedings as to whether TTI agreed to the JVC's arbitration clause.

demonstration of this, the JVC places only limited obligations on Mr. Meng (Party A) in his personal capacity; the lion's share of the JVC's actual tangible obligations are imposed on **Mr. Meng's affiliates**, such as the BMP entities.

For example, the JVC obligates Mr. Meng to take actions in his capacity as the owner and operator of Party A's affiliates, including the BMP Entities. For example, Section 7.1(e) provides in part: "Party A shall, in principle, first sell and process the inventory of Party A's affiliates." (Doc 30-1 – Pg 12). While the section is phrased creating an obligation for Mr. Meng, for the JVC to have any practical effect, it is the BMP Entities who are the true obligors. The JVC further requires in Section 7(d) and (e) that "Party A" must first lease and then sell the BMP Entities' "tangible assets to related to refrigerant distribution (including land, plants, vehicles and equipment." (*Id.* at Pg 13.) Again, the real obligor here is the BMP Entities that Mr. Meng owned and operated, not Mr. Meng personally. Any contrary reading obviates the JVC and defeats the clear aspiration of its signatories. *Hirsch v. Jupiter Golf Club LLC*, 232 F. Supp. 3d 1243, 1253–54 (S.D. Fla. 2017) ("[W]hen interpreting multiple provisions in contracts, courts will not interpret a contract in

such a way as to render provisions meaningless when there is a reasonable interpretation that does not do so."); *see Hibiscus*, 50 F.3d at 919 ("The cardinal rule of contract law is that a court should strive to effectuate the intent of the parties."). ‼

The JVC's arbitration clause must also apply to Party A's affiliates for it to have any meaning. The arbitration clause provides: "[a]ny dispute arising from the performance of this contract or related to this contract shall be submitted to Shanghai International Economic and Trade Arbitration Commission . . . for arbitration as a final settlement . . . ." (Doc 30-1 – Pg 33 ¶ 22.2.) The sentence compelling arbitration is written in the passive tense—it does not limit those that are required to arbitrate just to the parties. Nor would that make sense. If the BMP Entities did not comply with the aforementioned obligations under the JVC, surely TTI believes they would be necessary parties to any dispute. It would only make sense for Party A's affiliates to also be bound by the arbitration clause, and the JVC must be interpreted accordingly.

Moreover, the drafters of the JVC knew when and how to exclude TTI from the JVC's obligations if they wanted to do so. For example, TTI

is excluded from Paragraphs 7.1(e), (f) and 7.2(d) of the JVC. (*Id.* at Pgs 15-16.) To the contrary, neither Party A, its affiliates, or TTI are excluded from the JVC's arbitration clause. (*Id.* at Pg 33 ¶ 22.2.)

Before the district court, TTI also relied on a strained interpretation of the JVC's arbitration provision to argue it was not bound, suggesting that use of the word "party" in the arbitration clause showed TTI is not included. But even a cursory review of the JVC's arbitration clause makes clear that the references to "party" clearly relate to the parties ***to the arbitration***—not "Party A" and "Party B". For example, the JVC provides: "[t]here shall be three arbitrators. Each party shall appoint an arbitrator within fourteen days after receiving the arbitration notice from the arbitration commission . . . ." (*Id.*) This reference to party clearly relates to the parties to the arbitration proceeding, not Party A and Party B to the JVC.

Helpfully, the Eastern District of Texas considered a very similar clause in a contract requiring arbitration before SIETAC. *See Protorch*, 2020 WL 2574626, at *5. The court concluded that a contract's affiliates were signatories to a contract containing an arbitration clause and were therefore bound to arbitrate their disputes despite not being named as a

formal "party." In reaching its conclusion, the court noted "[t]here could hardly be broader general language than the 'any dispute' language found in the OEM Agreement's arbitration clause." *Id.* (internal quotations omitted). The court also concluded that affiliates were bound by the contract's arbitration clause because the affiliates had certain obligations under the agreement, including from engaging in unauthorized sales or marketing. *Id.* Given the affiliates' obligations under the contract, that they played an indispensable role in the performance of "Party A's" obligations under the contract, and that the sentence compelling arbitration applied to "any dispute" but was not limited to the parties, displayed the intent that Party A's affiliates were bound by the arbitration clause. *See id.* at *5-7.

The JVC mirrors the contract at issue in *Protorch*. As discussed above, the JVC places substantial obligations on Party A's affiliates, including to cease doing business and to transfer its assets to the new company—iGas USA. Similarly, the sentence compelling arbitration is not limited to Party A and Party B. Like the contract in *Protorch*, the parties clearly intended to bind the party's affiliates to the contract's arbitration clause.

42

To be sure, the JVC's structure may appear unusual to an American audience. American contracts generally do not create obligations for corporate entities by expressly requiring named officers or directors of those corporate entities to take or refrain from some action. Instead, American contracts typically simply state that the corporate entity itself—not its officers or directors—must take or refrain from some action. But, the JVC is not an American contract; it's a Chinese contract. To enforce the intent of the JVC's signatories, the JVC must be evaluated under the Chinese-law framework anticipated by its signatories. Applying American contractual interpretation principles to a contract that states it is to be interpreted under Chinese law is emphatically not "effectuat[ing] the intent of the parties." *See also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1341 (11th Cir. 2005) (contractual choice of law provisions are enforceable in Florida absent contravening public policy). As the record demonstrates, Chinese commercial contracts regularly use a "Party A" and "Party B" format for contracts that appears intended to in fact bind other individuals and entities. (Doc 44-1.) In any event, this entire issue further highlights why a Chinese arbitrator should be deciding this issue of Chinese law, just as the JVC intended.

43

To the extent this Court decides to resolve the issue, the Court should conclude that TTI is bound by the JVC's arbitration agreement. Most basically, a party to a contract is a person or entity who has promised to give up rights or property in exchange for a promise by another to give up rights or property. *Pier 1 Cruise Experts v. Revelex Corp.*, 929 F.3d 1334, 1347 (11th Cir. 2019) ("Under the law of Florida, there are several basic requirements of a valid contract: offer, acceptance, consideration[,] and sufficient specification of essential terms. Consideration, Florida courts have held, is the primary element moving the execution of a contract[.]") (internal citations and quotations omitted); *Johnson Enters. of Jacksonville v. FPL Grp., Inc.*, 162 F.3d 1290, 1311 (11th Cir. 1998) ("In a bilateral contract, the exchange of promises by both parties constitutes consideration . . . .").

The JVC reflects TTI exchanging promises with Juhua. The JVC requires TTI to buy refrigerant related goods from Juhua so long as Juhua can meet TTI's demand. (Doc 30-1 – Pg 22 ¶ 11.1.) In return, Juhua promised to provide preferential pricing to TTI and to assist in sourcing refrigerant related goods. (*Id.* at Pg 16 ¶ 7.2(a), (c).) Both Juhua and TTI signed the JVC. (*Id.* at Pg 36.) All the elements of a contract are

44

therefore present. And, the contract to which TTI agreed requires that "[a]ny dispute arising from the performance of this contract or related to this contract shall be submitted to [SIETAC]." (*Id.* at Pg 33.)

To be sure, and as discussed above, specific sections of the JVC expressly exclude TTI from incurring certain specific obligations that other "affiliates" take on. (*Id.* at Pgs 5-16). But those express exclusions only further **prove** that TTI is a party—if the signatories explicitly excluded TTI from specific obligations, they certainly intended TTI to be bound by those obligations from which it was not excluded. Tellingly, the JVC's arbitration clause carves out no exception for TTI. (*Id.* at Pg 33).

Last, and critically, neither TTI nor the district court have cited *any case* where a corporation who signed a contract under which it incurred both rights and obligations was deemed a "non-party, third-party beneficiary," such that it was not bound by the contract's arbitration clause. TTI signed the JVC—it is a signatory, and it should not be able to avoid the contractual agreement to arbitrate.

### D.    Relatedly, iGas USA and iGas Holdings may enforce the JVC's arbitration clause even if they are non-parties to the JVC.

Once again, which parties are bound by (or permitted to enforce) the arbitration clause is an issue delegated to the arbitrator. But to the extent this Court disagrees, the Importer Defendants may enforce the JVC's arbitration clause, and that is true even assuming they are not parties to the JVC. A party to a dispute may invoke an arbitration agreement that it did not sign "if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). The Eleventh Circuit has enumerated three bases under which non-signatories may compel arbitration: (1) equitable estoppel; (2) agency or related principles; and (3) third-party beneficiary. *See MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999).

Under the theory of agency or related principles, arbitration should be permitted because "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *Id.*

Here, Mr. Meng's ownership and control of the BMP Entities, iGas

46

USA, and iGas Holdings is a core allegation of TTI's Complaint. (Doc 1 – Pgs 2-3 ¶¶ 4-11). Consequently, iGas USA and iGas Holdings should be allowed to enforce the JVC's arbitration provision under the allegations in TTI's Complaint. *Syscom (USA), Inc. v. Nakajima USA, Inc.*, No. CV1407137ABJPRX, 2014 WL 12695688, at *1 (C.D. Cal. Dec. 3, 2014) (granting motion to compel arbitration in a fraudulent conveyance case where only one of the three defendants was a signatory because plaintiff "affirmatively alleges each of the non-signatory defendants was the agent or alter ego of [defendant] in committing each and every act alleged in the complaint, he is bound by the legal consequences of those allegations").

Moreover, TTI asserts three fraudulent transfer claims in its complaint—in each count one BMP entity is named and one iGas entity is named. (Doc 1 – Pgs 15-23.) The Complaint alleges that the BMP Entities as the transferor fraudulently transferred assets to the iGas Entities as the transferee. There is thus a sufficiently close relationship between the BMP Entities and the iGas Entities such that the iGas Entities should be allowed to enforce the JVC. The relationship is even stronger when considering that the JVC ***itself*** governs the transfer of

some of these assets and the JVC also discusses the process Party A and its affiliates must undertake with respect to HFC allowances—another asset that TTI contends was fraudulently transferred. (Doc. 30-1 Pgs 15, 22 ¶¶ 7.1, 11.1.)

The iGas Entities are also entitled to enforce the arbitration clause under the doctrine of equitable estoppel. "Under Florida law, the doctrine of equitable estoppel allows a nonsignatory to an arbitration agreement to compel arbitration if a signatory's claim against it 'is inextricably intertwined with his claims against the contract signatory.'" *McAdoo v. New Line Transp., LLC*, No. 8:16-CV-1917-T-27AEP, 2017 WL 942114, at *5 (M.D. Fla. Mar. 9, 2017) (quoting *Escobal v. Celebration Cruise Operator, Inc.*, 482 F. App'x 475, 476 n.3 (11th Cir. 2012)); *see also Dimattina Holdings, LLC v. Steri-Clean, Inc.*, 195 F. Supp.3d 1285, 1292 (S.D. Fla. July 18, 2016) (same). "Otherwise, the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *McAdo*, 2017 WL 942114, at *5. (internal quotations omitted). In other words, estoppel allows a non-signatory to enforce an arbitration agreement where a plaintiff alleges concerted action by a non-signatory and one or more of

the signatories to an arbitration agreement. *See, e.g.*, *MS Dealer*, 177 F.3d at 942; *Armas v. Prudential Sec., Inc.*, 842 So. 2d 210 (Fla. 3d DCA 2003). While TTI is likely to argue that equitable estoppel does not apply because Mr. Meng is not a defendant to the underlying lawsuit, this argument is a non-starter as TTI placed Mr. Meng's control over the Importer Defendants and the alleged transfers at issue. For example, TTI alleges in the lawsuit that "Meng also caused BMP USA to transfer over $750,000 worth of equipment to another company he controls, iGas USA, Inc." (Doc. 1 – Pgs 3, 13.) TTI also alleges in the underlying lawsuit that Mr. Meng's control over BMP International and iGas Holdings "allows Meng to continue to use the HFC allowances for his benefit but ostensibly protects them from collection efforts by T.T." (*Id.* at Pg 16 ¶ 82; *see also id.* at Pgs 17, 19, 21 ¶¶ 88, 92, 98-99, 104-105, 109.) TTI has squarely placed Mr. Meng's control over the Importer Defendants and the alleged transfers at issue, allowing the Importer Defendants to enforce the JVC's arbitration clause under an equitable estoppel theory. TTI should not be able to artfully plead its claims to remove Mr. Meng as a defendant to avoid its agreement to arbitrate claims arising out of or related to the JVC.

Finally, the BMP Entities and iGas USA could—if deemed non-parties to the JVC—enforce the JVC's arbitration clause as third-party beneficiaries. *Henderson v. Idowu*, 828 So. 2d 451, 452 (Fla. 4th DCA 2002) (holding non-signatory to the arbitration agreement was a third-party beneficiary and thus entitled to invoke the arbitration provision).

In short, just like TTI, all of the Importer Defendants are bound by, and entitled to enforce, the JVC's arbitration clause.

## CONCLUSION

This Court should reverse the district court's denial of the motion to compel arbitration and direct that the district court enter an order compelling this case to arbitration before SIETAC.

Respectfully submitted,

/s/ *Michael T. Raupp*

MICHAEL T. RAUPP
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone (816) 983-8000
Facsimile (816) 983-8080
michael.raupp@huschblackwell.com

and

LAUREN HAYES
HUSCH BLACKWELL LLP
111 Congress Ave., Suite 1400
Austin, Texas 78701
Telephone (512) 472-5456
Facsimile (512) 472-5456
lauren.hayes@huschblackwell.com

*Attorneys for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 10,267 words.

2.    This document complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Century Schoolbook, 14-point font.

*/s/ Michael T. Raupp*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Michael T. Raupp*